## Case No. 3,070.

### The COMPTA.

[5 Sawy. 137.][1]

District Court, D. California. April 6, 1878.

RULE OF DAMAGES—PRIVATE CONTRACT—LIABILITY —SHIPPER'S PROFITS IMMATERIAL.

1. Where goods are delivered in a damaged condition, the damage sustained is the difference between their market value, if sound, and their value in their unsound condition—both values to be computed as of the time where the goods were, or should have been, delivered.

2. The ship's liability is not affected by private contracts between the shipper and strangers for the purchase and sale of the goods.

3. It is immaterial what disposition the shipper has made of the goods since the breach of contract occurred. If he has chosen to hold them for a better market it was at his own risk and for his own account. The liability of the carrier is in no way affected by the result of the speculation. A rise in the price of the goods will not diminish his liability; nor a fall increase it.

[In admiralty. Libel for damages to cargo. There was a decree for libellant, and a reference to compute the damages (Case No. 3,069, next preceding), and the present

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

hearing is upon exceptions to the commissioner's report.]

Geo. B. Merrill, for libellants.

C. Temple Emmet, for claimants.

HOFFMAN, District Judge. The rule of damages in cases of this description is too well settled to require argument or authority. Where goods are delivered in a damaged condition, the damage sustained is the difference between their market value, if sound, and their market value in their unsound condition. Both values to be ascertained as of the time when the goods were, or should have been, delivered.

The private contract between Mr. Merrill and Mr. Kittle, in the case at bar, can have no influence on the amount to be awarded, except so far as it affords some indication of the market value at the time of delivery, and this for several reasons: (1) It does not appear that the contract was made by the libellants, or that they were bound by it; (2) the contract was rescinded as the linseed contracted for "could not be furnished;" (3) to allow the ship's liability for failure to perform her contract to be in any way affected by secret arrangements between the shipper and strangers, is wholly inadmissible. If permitted, a door to gross fraud would be opened. For the shipper might enter into pretended contracts at exaggerated values, and thus attempt to increase the liability of the ship. So on the other hand, it is of no concern to the ship if the shipper has agreed to sell the goods at a price below their real value, or even to give them away. Her master has agreed to deliver the contents of the bill of lading in good condition. He has delivered them damaged. He must therefore pay the difference in value. What the shipper agreed to sell them to a stranger for is as irrelevant as would be evidence to show that the expected purchaser, shortly after the arrival of the vessel, became bankrupt, and that the shipper, if he had delivered the goods to him, would have lost their price.

It is in like manner immaterial what disposition the shipper has made of the goods since their delivery to him, and especially since the commencement of the suit, except so far as the prices obtained by him may serve to show the market price at the time and place of delivery, or, in other words, the time of the breach of contract by the ship. If the shipper has seen fit to hold the goods for a better market, he has entered into a speculation the result of which can in no way affect the liability of the ship. If he has obtained a higher price than could have been realized at the time of the breach, the ship's liability is not thereby diminished. If he has sold them at a lower price, her liability is not increased.

With the expenses incidental to this speculation, such as storage, insurance, etc., the ship has nothing to do. The ship-owner has not authorized them. He can neither profit nor lose by the result of the expenditure. These observations are especially applicable to this case, since it appears that those expenses were incurred, and the sales made long subsequently to the filing of this libel. Neither can the rise in price of the linseed diminish the ship's liability any more than a fall in price would have increased it. The ship-owner by the bill of lading does not enter into any engagement with the owner of goods that may be damaged, to go into a joint speculative operation founded upon the anticipated state of the market at some indefinite future time, to be judged of by the shipper, who retains in his own hands the whole conduct of the adventure. Such a rule would impose on the ship-owner obligations and liabilities little suspected by persons engaged in that business, and of which his contract by bill of lading contains no hint. The only safe, rational and equal rule, is to hold, as before stated, the vessel liable for the difference between market value of the goods, if sound, and their value in their damaged condition, at the time and place of delivery.

The commissioner in his report has submitted three computations of damages based on as many different theories for ascertaining them. In his third computation he had adopted the rule herein laid down. The market price of sound linseed on or about the first of March, which was the time of delivery, he finds to have been three and a quarter cents per pound, on a credit of sixty days, which for one million one hundred and eighty-three thousand pounds gives thirty-eight thousand four hundred and forty-seven dollars and fifty cents; reducing this to cash by a rebate of interest, he fixes the sound market value for cash on that date at thirty-seven thousand six hundred and seventy-eight dollars and fifty-six cents.

To arrive at the difference between that value and the cash value of the goods in their damaged condition, the proofs furnish only two data. First. The offer made by Mr. Kittle to give for the whole shipment two and one half cents per pound, cash. This offer was declined. It may, therefore, be inferred that in the opinion of the holders, this damage did not exceed the difference between Mr. Kittle's offer and the sound value. The second means of arriving at the difference in question is furnished by comparing the amount actually realized for the goods at the subsequent sale (April 18) with the amount they would have brought, if sound, at that date. The price of linseed was at that time one quarter of a cent higher than on March 1. There is no reason for supposing that the rise in price disturbed the ratio previously existing between the values of sound and damaged seed. Both would naturally respond to the general advance of the market.

On the eighteenth of April, the market value of sound linseed was three and one

half cents per pound, at sixty days credit. This for one million one hundred and eighty-three thousand pounds would be forty-one thousand four hundred and five dollars, which reduced to cash would be forty thousand five hundred and seventy-six dollars and ninety cents. Actual sales at that date brought thirty-four thousand five hundred and ninety-eight dollars and twenty cents, which reduced to cash gives thirty-three thousand nine hundred and six dollars and thirty-four cents; difference, six thousand six hundred and seventy dollars and fifty cents, which amounts to a depreciation or difference in value on account of damage of sixteen and forty-four one hundredths per cent.

On the first of March, the cash market value of sound linseed was, as we have seen, thirty-seven thousand six hundred and seventy-eight dollars and fifty-six cents. Sixteen and forty-four one hundredths per cent. of this gives for depreciation in value, by reason of damage, six thousand one hundred and ninety-four dollars and thirty-six cents. Deduct rebate of duty allowed at custom-house, nine hundred and twenty-four dollars and twenty-five cents. Total damage, five thousand two hundred and seventy dollars and eleven cents, for which, in addition to the amount heretofore found to be due on the damage to ·bags and burlaps, with interest from March 1, a decree will be entered. The expenses of storage, insurance, etc., are excluded from this computation for the reasons already given.